2022 IL App (1st) 210267

No. 1-21-0267

Opinion filed May 10, 2022.

Second Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY, Individually and as Subrogee of Davis Concrete Construction Company, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | No. 2018 CH 226 |
| v. | ) ) | |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) | The Honorable David B. Atkins, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE LAVIN delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1    This declaratory judgment action stems from an underlying wrongful death suit in which

a 13-year-old boy was fatally struck by a dump truck driven by an employee of Davis Concrete

Construction Company (Davis Concrete) as he was returning to a road construction project. At

the time of the accident, Davis Concrete was insured by Nationwide Property and Casualty

Insurance Company (Nationwide), as well as by State Farm Fire and Casualty Company (State

Farm). While both insurers eventually contributed to a settlement that was reached in the underlying case, only Nationwide contributed on behalf of Davis Concrete.

¶ 2    Subsequently, Nationwide filed the instant declaratory judgment action against State Farm, asserting that State Farm had a duty to defend Davis Concrete in the underlying suit under a commercial general liability (CGL) policy and that it was entitled to indemnity from State Farm for the settlement amount it contributed on Davis Concrete's behalf. The parties filed cross-motions for summary judgment on that issue, among other issues. The circuit court ultimately concluded that State Farm had no duty to defend Davis Concrete in the underlying suit because coverage was precluded by an automotive exclusion in the CGL policy and, consequently, Nationwide was not entitled to indemnification for the settlement.

¶ 3    On appeal, Nationwide argues that the circuit court erred in concluding that no duty to defend was triggered because the underlying complaint alleged facts concerning Davis Concrete's negligence that were not encompassed by State Farm's automotive exclusion and thus were within, or potentially within the policy's coverage. Nationwide also argues, as it did below, that State Farm was equitably estopped from raising any policy defenses to coverage because it failed to either defend the underlying suit under a reservation of rights or timely seek a declaratory judgment that it owed no coverage to Davis Concrete. For the reasons that follow, we affirm in part and reverse in part the circuit court's judgment and remand for further proceedings consistent with this order.

¶ 4                                  I. BACKGROUND

¶ 5    The following relevant facts are not in dispute.

¶ 6                          A. Underlying Wrongful Death Case

¶ 7    In the summer 2016, Crowley-Sheppard Asphalt, Inc. (Crowley-Sheppard), an underlying defendant, was the general contractor of a street rehabilitation project located near 87th Street and Latrobe Avenue in the Village of Burbank, Illinois. Crowley-Sheppard subcontracted some of the work, namely excavating and concrete services, to Davis Concrete. Pursuant to their contract, Davis Concrete agreed to maintain a liability policy and to name Crowley-Sheppard as an additional insured under the policy.

¶ 8    Thereafter, Davis Concrete subcontracted some of its work to RJ&R Trucking and Excavating, Inc. (RJ&R), another underlying defendant. Under their contract, RJ&R agreed to haul debris and to provide dump trucks for the rehabilitation project. RJ&R also agreed to carry liability insurance "against claims for injuries or death of persons and damage to property, arising directly or indirectly from the operations under [their] Agreement and/or the Construction Contract, whether such injuries, death or damage resulted from any act or neglect of [RJ&R] or any other person directly or indirectly employed by [RJ&R]." More specifically, their contract called for RJ&R to carry the following types of coverage and limits of liability:

"B. *Commercial General Liability Insurance* on an occurrence basis with a combined bodily injury and property damage limit of at least $1,000,000 per occurrence, and $2,000,000 per project aggregate, or such greater sum as may be reasonable required by [David Concrete].

* * *

a. Additionally Insured Status: The above policy shall include an endorsement identifying Davis Concrete Construction Co. as the Additional Insured for Ongoing Operations and Products/Completed Operations *** and

must be on a primary/non-contributory basis. The General Aggregate limit shall apply separately to each project.

* * *

C. *Commercial Automobile Liability Insurance* covering use of all owned, non-owned and hired vehicles with Bodily Injury and Property Damage limit of at least $1,000,000 Combined Single Limit, or such greater sum as required by the Contract.

D. *Excess or Umbrella Liability Insurance* in the amount of $3,000,000 per occurrence and in the aggregate, or such greater sum as may be reasonably required by the Contractor. This policy shall be a follow form policy and shall be excess over coverages A, B, and C above."

¶ 9　On June 3, 2016, Eugene Caruso, an RJ&R employee, was driving a dump truck westbound on 87th Street in Burbank on his way back to Davis Concrete's construction site. As Caruso turned northbound onto Latrobe Avenue, he struck 13-year-old Brian Schrader (Brian), who was crossing the street on a bicycle. Brian died from his injuries later that day.

¶ 10　At the time of the accident, RJ&R was covered under an automobile liability policy issued by State Farm Mutual Automobile Insurance Company with a coverage limit of $1 million for bodily injury and property damage. RJ&R was also covered under a commercial liability umbrella policy (also referred to as a CLUP) and a businessowners policy (also known as and hereafter referred to as a CGL policy) issued by State Farm with coverage limits of $2 million and $1 million, respectively, for bodily injury and property damage. The CGL policy included, as relevant here, a motor vehicle exclusion that stated:

"SECTION II—EXCLUSIONS

Applicable to *Coverage L-Business Liability*, this insurance does not apply to:

8. Aircraft, Auto or Watercraft

'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured. Use also includes operation and 'loading or unloading.'

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage' involved the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft that is owned or operated by or rented or loaned to any insured."

¶ 11    On February 14, 2017, Brian's mother, Melissa Schrader (Melissa), filed, as special administrator of Brian's estate, the underlying wrongful death action against RJ&R, Caruso, Crowley-Sheppard, and Work Zone Safety, Inc., the contractor responsible for providing traffic control services on the construction project, and eventually Davis Concrete (as will be discussed below).

¶ 12    About a month later, Crowley-Sheppard tendered its defense to Davis Concrete and Nationwide (Davis Concrete's primary insurer). Nationwide did not accept the tender; instead, it sent the tender to State Farm (RJ&R's insurer). State Farm accepted Crowley-Sheppard's tender without any reservation of rights, even though there was no contract between Crowley-Sheppard and RJ&R. Meanwhile, Melissa amended her negligence complaint to add a wrongful death claim against Davis Concrete. She alleged, as relevant here, that Davis Concrete "was negligent in one or more of the following respects:

a. Failed to take adequate precautionary measures to ensure public safety, including use of a flagman at the aforesaid intersection;

b. Permitted and allowed an oversized dump truck to turn into the wrong lane on a residential street; and

c. Permitted and allowed a dump truck on a street in excess of the allowable weight for that street."

Davis Concrete tendered its defense of those claims to RJ&R and State Farm. Davis Concrete subsequently sent State Farm three written requests for a response to its tendered defense. As a trial date approached in the underlying litigation, the circuit court ordered State Farm to provide a written response to Davis Concrete's tender. Yet, State Farm failed to do so.

¶ 13    Ultimately, Melissa and the underlying defendants settled the wrongful death suit for $3.5 million (Schrader settlement). Pursuant to the terms of their agreement, State Farm, on behalf of RJ&R, contributed $3 million to the settlement, exhausting the coverage limits under the automobile policy and the CLUP. Crowley-Sheppard's liability insurer contributed $100,000 to the Schrader settlement, while Nationwide, on behalf of Davis Concrete, contributed $400,000 to it.

¶ 14                    B. Declaratory Judgment Action

¶ 15    Nationwide filed the instant declaratory judgment action against RJ&R and State Farm on January 8, 2018. The next year, Davis Concrete informed State Farm of the settlement and demanded that it pay Davis Concrete's legal defense fees and costs and that it fund the $400,000 Schrader settlement amount that Nationwide contributed on behalf of Davis Concrete. State Farm did not respond to Davis Concrete's demands, leading the circuit court to order State Farm to provide a written response to them by April 8, 2019. State Farm then responded that it would

pay Davis Concrete's reasonable attorney fees and legal costs but did not respond to Davis Concrete's demand for indemnity as to the Schrader settlement amount. Consequently, Nationwide, as Davis Concrete's subrogee, filed, as relevant here, a fourth amended complaint against RJ&R and State Farm, seeking indemnity for the $400,000 settlement amount. We note that at this point, State Farm had reimbursed Nationwide for the attorney fees and legal costs it incurred in defending against the underlying litigation.

¶ 16     On January 21, 2020, State Farm filed an answer to Nationwide's complaint, denying that it owed Davis Concrete any obligation to fund the Schrader settlement. State Farm also filed, for the first time, a multi-count counterclaim seeking a declaratory judgment that no coverage was triggered under the CGL policy. Specifically, State Farm asserted that it had exhausted the coverage limits under the automobile policy and the CLUP and that it owed Davis Concrete no duty to defend or indemnify under the CGL policy because the allegations set forth in the underlying complaint were excluded by the policy's automotive exclusion.

¶ 17     The parties eventually filed cross-motions for summary judgment. Nationwide argued that the CGL policy's automotive exclusion did not apply because the underlying complaint alleged non-automobile-related conduct, namely, that Davis Concrete was negligent because it "[f]ailed to take adequate precautionary measures to ensure public safety, including use of a flagman at the aforesaid intersection." Nationwide further argued that State Farm was equitably estopped from asserting any policy defenses to coverage based on State Farm's failure to defend Davis Concrete in the underlying suit and its unreasonable delay in providing a written response to Davis Concrete's tender that effectively forced Davis Concrete to settle the underlying matter. State Farm, on the other hand, argued that there was no duty to defend because the underlying allegations were all related to automobile use, thereby triggering application of the CGL policy's

automotive exclusion. Additionally, State Farm sought reimbursement from Nationwide for costs associated with its underlying defense of Crowley-Sheppard.

¶ 18    The circuit court ultimately concluded that the allegations in the underlying complaint were precluded by the CGL policy's automotive exclusion; thus, State Farm had no duty to defend or indemnify Nationwide, as the subrogee of Davis Concrete. Because there was no duty to defend, the court concluded that estoppel did not apply. Finally, the court denied State Farm's reimbursement request as to Crowley-Sheppard's defense costs. The court entered its order on February 16, 2021, granting in part and denying in part the parties' cross-motions for summary judgment. This appeal followed.

¶ 19                                    II. ANALYSIS

¶ 20    As stated, Nationwide contends that the circuit court erroneously granted summary judgment to State Farm in this case because it had a duty to defend Davis Concrete since the underlying complaint alleged facts concerning Davis Concrete's negligence that were within, or potentially within, the CGL policy's coverage. In addition, Nationwide contends that State Farm was equitably estopped from raising any policy defenses to coverage because it failed to either defend the underlying suit under a reservation of rights or timely seek a declaratory judgment that it owed no coverage to Davis Concrete.

¶ 21    Construction of an insurance policy and a determination of the parties' rights under the policy are questions of law properly disposed of by way of summary judgment. *Zdeb v. Allstate Insurance Co.*, 404 Ill. App. 3d 113, 116 (2010). Summary judgment is appropriate when no genuine issue of material fact exists such that the movant is entitled to judgment as a matter of law. *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 359 Ill. App. 3d 749, 755 (2005). Where, as here, the parties file cross-motions for summary judgment, they concede the absence of a

genuine issue of material fact and invite the court to decide the questions presented as a matter of law. *Id.*; *Daniel v. Aon Corp.*, 2011 IL App (1st) 101508, ¶ 17; *Illinois Emcasco Insurance Co. v. Tufano*, 2016 IL App (1st) 151196, ¶ 17. Thus, the sole issue before this court is whether State Farm was entitled to judgment as a matter of law, and as with all questions of law, our review is *de novo*. *Steadfast Insurance Co.*, 359 Ill. App. 3d at 755; *Daniel*, 2011 IL App (1st) 101508, ¶ 17.

¶ 22                                  A. Duty to Defend

¶ 23    It is well settled that an insurer's duty to defend and its duty to indemnify its insured are separate and distinct duties. *Fremont Casualty Insurance Co. v. Ace-Chicago Great Dane Corp.*, 317 Ill. App. 3d 67, 72 (2000). Because an insurer's duty to indemnify its insured cannot exist in the absence of a duty to defend, we must first determine whether State Farm had a duty to defend Davis Concrete against the underlying negligence action, and whether State Farm breached that duty by failing to do so. *Id.* at 73.

¶ 24    In a declaratory judgment action concerning an insurer's duty to defend, a court compares the factual allegations of the underlying complaint to the language of the relevant coverage provisions of the insurance policy. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010); *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 125 (1992); *Acuity Insurance Co. v. 950 West Huron Condominium Ass'n*, 2019 IL App (1st) 180743, ¶ 24. If the underlying complaint alleged facts within, or potentially within the policy's coverage, the insurer's duty to defend is triggered even if the allegations are groundless, false, or fraudulent. *Northbrook Property & Casualty Co. v. Transportation Joint Agreement*, 194 Ill. 2d 96, 98 (2000); *Wilson*, 237 Ill. 2d at 455; *Outboard Marine Corp.*, 154 Ill. 2d at 125; *950 West Huron Condominium Ass'n*, 2019 IL App (1st) 180743, ¶ 24. Additionally, the allegations of the

underlying complaint must be liberally construed in favor of the insured, resolving any doubt or ambiguity about coverage against the insurer. *950 West Huron Condominium Ass'n*, 2019 IL App (1st) 180743, ¶ 24. In other words, an insurer may not justifiably refuse to defend an action brought against its insured unless it is clear from the face of the underlying complaint that the factual allegations pled do not fall within, or potentially within, the policy's coverage. *Northbrook Property & Casualty Co.*, 194 Ill. 2d at 98.

¶ 25     In addition, because an insurance policy is a contract, we apply general rules of contract interpretation. *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010); *First Mercury Insurance Co. v. Nationwide Security Services, Inc.*, 2016 IL App (1st) 143924, ¶ 26. A court's primary objective in construing a contract is to ascertain and give effect to the parties' intentions as expressed through the contract's language. *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011). If the words employed in the contract are clear and unambiguous, they must be given their plain, ordinary, and popular meaning. *Id.* Provisions in an insurance policy excluding or limiting coverage, however, will be read narrowly, and the applicability of the exclusion must be clear and free from doubt. *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 393-94 (2005); *Empire Indemnity Insurance Co. v. Chicago Province of the Society of Jesus*, 2013 IL App (1st) 112346, ¶ 39. Finally, the insurer bears the burden of affirmatively demonstrating that a claim falls within an exclusion. *American Zurich Insurance Co. v. Wilcox & Christopoulos, L.L.C.*, 2013 IL App (1st) 120402, ¶ 34; *Continental Casualty Co. v. McDowell & Colantoni, Ltd.*, 282 Ill. App. 3d 236, 241 (1996).

¶ 26     Nationwide argues that the automotive exclusion in State Farm's CGL policy did not apply in this case because the underlying negligence complaint alleged facts separate from the operation of a motor vehicle that were within, or potentially within the policy's coverage,

thereby triggering a duty to defend. Specifically, Nationwide points to the underlying allegation that Davis Concrete was negligent because it "[f]ailed to take adequate precautionary measures to ensure public safety, including use of a flagman at the aforesaid intersection." State Farm disagrees, arguing that the automotive exclusion unambiguously applied because the liability asserted in the underlying action clearly arose out of the operation of the dump truck that fatally struck Brian; thus, it owed Davis Concrete no duty to defend.

¶ 27    We agree with Nationwide that the underlying complaint alleged facts outside of the automotive exclusion that fell within, or potentially within, the CGL policy's coverage. As set forth above, Melissa's complaint alleged that Davis Concrete was negligent because it "[f]ailed to take adequate precautionary measures to ensure public safety, including use of a flagman at the aforesaid intersection." This allegation is separate and distinct from Melissa's other allegations concerning Davis Concrete's negligent operation and/or monitoring of the dump truck, which stated that Davis Concrete was negligent because it "[p]ermitted and allowed an oversized dump truck to turn into the wrong lane on a residential street" and "[p]ermitted and allowed a dump truck on a street in excess of the allowable weight for that street."

¶ 28    We note that at oral argument before this court, counsel for State Farm argued that the public safety allegation was not separate and distinct from the other two allegations of negligence, which clearly fell within the automotive exclusion, because it was a conjunctive allegation. Counsel argued that because all three allegations were asserted under the same negligence count in the underlying complaint, they had to be read in conjunction with one another. We disagree. Melissa's complaint expressly stated that Davis Concrete "was negligent in one *or* more of the following respects" (emphasis added) before setting forth the three allegations. This language is consistent with the language found in the standard issues Illinois

Pattern Jury Instruction, Civil, No. 20.01 (2011) for negligence, which states: "[t]he plaintiff claims that he was injured and sustained damage, and that the defendant[s] [was] [were] negligent in one *or* more of the following respects." (Emphasis added.) Thus, a jury need not find that a defendant was negligent based on every allegation asserted by a plaintiff; it may find that only one allegation of negligence was satisfied. Likewise, here, a jury could have found that Davis Concrete was negligent because it failed to ensure that public safety measures were in place near the construction site without necessarily finding that Davis Concrete was also negligent due to its operation of the dump truck.

¶ 29     In any event, the public safety allegation is not encompassed by the plain language of the automotive exclusion. By its own terms, the exclusion applied to bodily injury and property damage "arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured." The exclusion also applied "if the claims allege[d] negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage' involved the ownership, maintenance, use or entrustment to others of any *** 'auto' *** that is owned or operated by or rented or loaned to any insured." Here, it is undisputed that Davis Concrete did not own or operate the dump truck that struck and ultimately killed Brian. Moreover, the public safety allegation did not set forth any facts involving Davis Concrete's "supervision, hiring, employment, training or monitoring" of Caruso or any other RJ&R employees. While State Farm claims that ensuring public safety at the intersection "require[d] the 'monitoring of others,' " it has not developed any legal argument or cited any authority demonstrating that safeguarding the public is categorically limited to the "monitoring of others."

¶ 30    State Farm, nonetheless, asserts that no duty to defend was triggered because the public safety allegation did not allege negligence "wholly independent of the operation of the [dump] truck," relying on *Northbrook Property & Casualty Co.*, 194 Ill. 2d 96. We find *Northbrook* distinguishable. In *Northbrook*, a Metra train collided with a school bus operated by various school districts, killing several students and injuring many others. The students' underlying negligence complaints alleged, among other things, that the school districts "inadequately planned and inspected bus routes or failed to warn bus drivers of potential hazards along the routes." *Id.* at 99. The insurance company later sought a declaration that it had no duty to defend the school districts against the students' lawsuits since the injuries arose out of the use or operation of a bus and were therefore excluded under the policy's automotive exclusion. *Id.* at 98. The supreme court ultimately agreed, concluding that the allegations in the complaint were "nothing more than rephrasings of the fact that the students' injuries arose from the school districts' use or operation of a motion vehicle" and that the "policy exclude[d] injuries arising from the school districts' use or operation of a motor vehicle." *Id.* at 98-99.

¶ 31    Unlike the underlying complaints in *Northbrook*, the underlying negligence complaint here included a public safety allegation that asserted Brian's death arose from a cause entirely independent of a motor vehicle. As stated, the complaint alleged that Davis Concrete was negligent because it "[f]ailed to take adequate precautionary measures to ensure public safety, including use of a flagman at the aforesaid intersection." This did not allege any facts concerning the dump truck or any other motor vehicle; rather, the public safety allegation provided an alternative potential cause of Brian's death, *i.e.*, Davis Concrete's failure to ensure adequate safety measures were in place for public individuals, like bikers and pedestrians, who encountered the construction area. Stated differently, a potential cause of Brian's death could

have been that there was no flagman present near the construction area to help him safely cross the street, a cause that had nothing to do with the dump truck and that was within, or potentially within, the CGL policy's coverage. See *United States Fidelity & Guaranty Co. v. State Farm Mutual Automobile Insurance Co.*, 152 Ill. App. 3d 46, 48 (1987) (stating, "[i]f a proximate cause of an injury is within the included coverage of an insurance policy, the included coverage is not voided merely because an additional proximate cause of the injury is a cause which is excluded under the policy").

¶ 32    Furthermore, in *Northbrook*, the underlying allegations of negligence all mentioned a motor vehicle, *i.e.*, the word "bus." And the students' alleged injuries could not have occurred absent the school districts' operation of the bus. Contrarily, here, Brian could have been injured by something entirely other than a motor vehicle as a result of Davis Concrete's failure to ensure public safety measures were in place, including the use of a flagman, around the construction site. For example, Brian could have ridden his bike into a construction ditch or other hazardous materials near the site, sustaining injuries. Thus, we cannot say the public safety allegation was simply another way of saying that Brian's death was caused by the dump truck particularly when the allegation itself did not even mention the dump truck or anything related to the truck. *Cf. Allstate Insurance Co. v. Pruitt*, 177 Ill. App. 3d 407, 413-14 (1988) (where the allegations of negligence were based solely on the minor's "use and operation of the minibike," the court held that the insurance policy's motor vehicle exclusion applied).

¶ 33    In *Louis Marsch, Inc. v. Pekin Insurance Co.*, 140 Ill. App. 3d 1079 (1985), the Appellate Court, Fifth District, reached a similar conclusion. There, a boy was injured after being struck by a dump trump owned by Louis Marsch, Inc. The underlying complaint filed by the boy's father asserted a negligent hiring claim against Marsch alleging that it "failed to employ the proper

number and placement of flagmen while the roadwork was taking place, and failed to mark a closed portion of the road with suitable warning signs or barricades." *Id.* at 1086. The *Marsch* court ultimately found that a duty to defend was triggered because those allegations were not precluded by an automotive exclusion, similar to the one here, in the insurance policy, stating "[t]here are a number of ways in which the minor Chizmar could have been injured as a result of improper deployment of flagmen and warning devices, only one of which was being struck by a motor vehicle. For example, Chizmar could have struck a worker, an excavation, or piled materials." *Id.* The court explained,

> "if a trier of fact concluded that Marsch had failed in its duty to Chizmar under the Road Construction Injuries Act, the fact that the dump truck was the instrumentality which ultimately injured Chizmar would be but one of two concurrent causes of the injury, one excluded under the [insurance] policy, the other not so excluded." *Id.*

The *Marsch* court then went a step further, stating, "[i]f the liability of an insured arises from negligent acts which constitute non-auto-related conduct, the policy should be applicable regardless of the automobile exclusion or the fact that an automobile was involved in the occurrence." *Id.*

¶ 34     Similarly, here, there are many ways in which Brian could have been injured as result of Davis Concrete's alleged public safety failures at the construction site, and a trier of fact could have reasonably concluded that the absence of a flagman was a cause of his death. Because the underlying negligence complaint alleged facts outside of the CGL policy's automotive exclusion and within, or potentially within, the policy's coverage, we conclude that State Farm's duty to defend was triggered and that State Farm breached its duty by not defending Davis Concrete in

the underlying suit. We therefore reverse the portion of the lower court's judgment holding there was no duty to defend based on the CGL policy's automotive exclusion.

¶ 35                                    B. Equitable Estoppel

¶ 36      We now turn to Nationwide's claim that State Farm was equitably estopped from asserting any policy defenses to coverage. Under the estoppel doctrine, an insurer which takes the position that a complaint potentially alleging coverage is not covered under a policy that includes a duty to defend may not simply refuse to defend the insured. *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 150 (1999). Rather, the insurer must either (1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage. *Id.* If the insurer takes neither action, and is later found to have wrongfully denied coverage, the insurer will be estopped from raising any policy defenses to coverage, even if those defenses would have been successful had the insurer not breached its duty to defend. *Id.* at 150-51.

¶ 37      To prevent estoppel, an insurer's claim for declaratory judgment must be timely filed. *Aetna Casualty & Surety Co. v. O'Rourke Bros., Inc.*, 333 Ill. App. 3d 871, 880 (2002). Where, as here, an insurer waits to seek a declaratory judgment that there is no coverage until after the underlying action has settled, the insurer's declaratory judgment request is untimely as a matter of law. *Employers Insurance of Wausau*, 186 Ill. 2d at 157. As set forth above, Davis Concrete tendered its defenses to RJ&R and State Farm on August 6, 2018. State Farm neither defended the suit under a reservation of rights nor sought a declaratory judgment that there was no coverage.[1] And even though Nationwide had already filed the present declaratory judgment action when the underlying suit settled, State Farm did not file its counterclaim in the declaratory

---

[1]At oral argument before this court, State Farm admitted that it did not defend Davis Concrete in the underlying suit under a reservation of rights.

action until almost a year after the parties settled the matter. State Farm's actions clearly were untimely as a matter of law. Furthermore, State Farm has offered no explanation for its untimeliness in seeking a declaratory judgment that it owed no coverage to Davis Concrete or why it failed to respond to Davis Concrete's tender, despite a number of court orders requiring it to do so. State Farm's arguments on appeal that it was not estopped from denying coverage all rest on the assumption that no duty to defend was triggered; State has not provided any legal argument that estoppel does not apply even if a duty to defend was triggered, as was the case here.

¶ 38    Based on the foregoing, we conclude that State Farm was estopped from asserting any policy defenses to coverage; we therefore reverse the portion of the lower court's judgment holding that estoppel did not apply in this case. Because the parties have not advanced, nor have we found any disputed facts concerning the amount of coverage State Farm owed to Davis Concrete, we conclude that Nationwide, as Davis Concrete's subrogee, is entitled to indemnity for the $400,000 it contributed to the Schrader settlement on Davis Concrete's behalf. We thus remand this matter to the circuit court to enter judgment in favor of Nationwide on its claim for indemnity in the amount of $400,000, and to determine and award Nationwide reasonable attorney fees and legal costs in connection with this litigation.

¶ 39                          III. CONCLUSION

¶ 40    State Farm had a duty to defend Davis Concrete because facts in Melissa's underlying negligence complaint fell within, or potentially within, the CGL policy's coverage. The record shows that State Farm breached its duty by not defending Davis Concrete in the underlying suit. Additionally, State Farm was estopped from asserting any policy defenses to coverage because it failed to either defend the suit under a reservation of rights or timely seek a declaratory judgment

that it owed no coverage. Finally, Nationwide was entitled to indemnification in the amount of $400,000, since coverage was triggered under State Farm's CGL policy and the parties have not disputed that Nationwide was entitled to that amount.

¶ 41    For the foregoing reasons, we reverse the circuit court's judgment that State Farm owed Davis Concrete no duty to defend and that Nationwide was not entitled to indemnification. Additionally, we reverse the court's judgment that estoppel did not apply in this case. We affirm all other aspects of the circuit court's judgment and remand for further proceedings consistent with this decision.

¶ 42    Affirmed in part and reversed in part; cause remanded.

---

**No. 1-21-0267**

---

| | |
|---|---|
| **Cite as:** | *Nationwide Property & Casualty Insurance Co. v. State Farm Fire & Casualty Co.*, 2022 IL App (1st) 210267 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2018-CH-226; the Hon. David B. Atkins, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | David E. Kawala, Catherine Basque Weiler, and T. Allon Renfro, of Swanson, Martin & Bell, LLP, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Rosa M. Tumialán, of Burke Warren MacKay & Serritella, P.C., of Chicago, for appellee. |

---