2025 IL App (1st) 241010

No. 1-24-1010

Opinion filed June 23, 2025.

First Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| SEVIIRI BUNJO, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2020 CH 04377 |
| | ) | |
| STATE FARM FIRE AND CASUALTY | ) | The Honorable |
| COMPANY, | ) | Caroline Kate Moreland, |
| | ) | Judge Presiding. |
| Defendant-Appellee. | ) | |

_____

JUSTICE LAVIN delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment and opinion.

## OPINION

¶ 1    In this declaratory judgment action, plaintiff Seviiri Bunjo appeals the circuit court's order granting summary judgment to defendant State Farm Fire and Casualty Company (State Farm). Specifically, the court found that plaintiff was not entitled to additional insurance proceeds for incident-related losses and lost rental income stemming from a break-in that occurred at his property, located in the Washington Park area of Chicago, on May 31, 2019.

¶ 2     On appeal, plaintiff contends that the lower court erroneously granted summary judgment to State Farm because genuine issues of material fact existed concerning the extent of actual damages he suffered as a result of the break-in, as well as reasonable repair costs, and whether State Farm breached the terms of the insurance policy. We disagree, and for the following reasons, we affirm the circuit court's judgment.

¶ 3                                    BACKGROUND

¶ 4     Plaintiff owned a three-story, three-unit residential property located at 5127 South Indiana Avenue in Chicago (Property) that he resided in and rented to others. State Farm issued a homeowners insurance policy to plaintiff for the Property for the period of January 1, 2019, to January 1, 2020 (Policy).

¶ 5     The Policy contained the following relevant provisions:

"**SECTION I – LOSSES INSURED**

**We** will pay for accidental direct physical loss to [the Property], caused by the following perils, unless the loss is excluded or limited in **SECTION I – LOSSES NOT INSURED** or otherwise excluded or limited in this policy.

* * *

8. **Vandalism or malicious mischief,** meaning only willful and malicious damage to or destruction of property

9. **Theft,** including attempted theft and loss of property from a known location when it is probable that the property has been stolen."

The Policy also included, as relevant here, a section containing losses that are not insured:

"2. **We** will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following excluded events.

* * *

> **a. Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a ***building structure*** or other structure."

Finally, the Policy provided coverage for loss of use of the property, absent a relevant exclusion applying:

> "**COVERAGE C – LOSS OF USE**
>
> 2. **Fair Rental Value.** When a **loss insured** causes that part of the **residence premises** rented to others or held for rental by **you** to become uninhabitable, **we** will pay for its fair rental value."

¶ 6　Meanwhile, on April 16, 2019, the City of Chicago (City) filed a verified emergency petition for appointment of a limited receiver in the municipal department of the Cook County circuit court "to correct conditions that fail to conform to minimum standards of health and safety" at the Property. According to the City, some units at the Property were without water service and electrical service, including heat, requiring tenants to stay at a hotel. Following a Chicago Building Department inspection, the City issued citations ordering plaintiff to correct all code violations. This required plaintiff to remove and replace work completed at the Property without permits, including plumbing and electrical systems, among other things.

¶ 7　Consequently, the court ordered plaintiff to vacate the Property by May 1, 2019. Additionally, plaintiff was ordered to "[b]oard and secure the subject premises *** once vacant and keep the subject premises boarded and secured until further order of [the] court." Finally, plaintiff had to pay his tenants' relocation assistance "by 9:00 a.m. on May 1, 2019." A week or so later, the court entered another order that plaintiff was "not to rent, use, lease, or occupy the

entire premises until further order of [the] court." An attorney for the City told plaintiff "[t]he litigation will continue until the violations are abated."

¶ 8     Later that month, on May 31, 2019, the Property was "vandalized, resulting in damage and theft of the heating, ventilation and air conditioning (HVAC) systems, plumbing systems, appliances, bathrooms, kitchens, drywall and floors throughout the [P]roperty." Plaintiff, shortly thereafter, filed an insurance claim with State Farm pursuant to his Policy, leading State Farm to send a claims adjuster to investigate the claimed damages. During the investigation, the claims adjuster took photographs of the damage and issued a report. Meanwhile, plaintiff's general contractor, Sean Rogers, began gutting the Property.

¶ 9     State Farm initially denied plaintiff's claim because it believed the Property had been vacant for at least 30 days before the break-in (and thus the claims were not covered under the Policy), but later changed its vacancy determination after contacting a tenant who confirmed she had occupied the Property within 30 days of the break-in. In December 2019, State Farm sent the estimate and draft for the repairs to plaintiff's then-attorney and subsequently mailed plaintiff a check for $32,879.79. Following negotiations with a public adjuster, as will be discussed below, State Farm sent plaintiff an additional $4,129.36.

¶ 10     We note, however, that according to plaintiff's complaint, he received an actual aggregated claim adjustment amount of $36,257.79, from State Farm. It is not entirely clear how plaintiff came up with that amount as neither the parties nor the circuit court have explained the exact amount plaintiff received from State Farm.

¶ 11     In any event, plaintiff disagreed with that amount and sent State Farm a quote from Rogers, estimating the repairs/renovations cost $98,340. Rogers, however, testified that his estimate was for a full gut rehab of the Property, rather than just for damages from the break-in.

In fact, Rogers testified in his deposition that he was not aware of the break-in and did not see State Farm's estimate for the repairs/renovations. According to Rogers, he was hired by plaintiff to correct some plumbing and other violations on the Property and "to do a gut rehab on the [P]roperty." Plaintiff told Rogers there were some "outstanding code violations" and that "he was looking for somebody to help fix them."

¶ 12     Rogers further admitted that "[w]hen [he] was first asked to view the [P]roperty it was to do a full gut rehab." More specifically, Rogers explained,

> "[W]hen [plaintiff and I] initially talked [plaintiff], brought me in, said that he wanted to do a gut rehab on the [P]roperty. Because of the code violations it was tearing down the porch, rebuilding the porch, bricking in some doorways to move doorways over. There was also redoing all the framing of the [P]roperty, new electrical, new plumbing."

Moreover, to remedy the code violations, Rogers had to "open up some of the walls" so the City could inspect the Property. Finally, as stated, Rogers testified in his deposition that he did not recall plaintiff telling him there was a break-in at the Property.

¶ 13     Plaintiff then hired a public adjuster, Vito Misceo, who met with State Farm's adjuster to review the Property. By that time, however, the Property had already been gutted. Consequently, Misceo's appraisal was based only on photographs (some of which were prior online real estate sale photographs) and the appraisal from State Farm's adjuster. In his deposition, Misceo testified, "the condition of the [P]roperty that it was left in made it nearly impossible for either of us to do our job because there was nothing left, there was nothing in the house." When asked about his conversation with the State Farm adjuster, Misceo stated:

"When we showed up on the scene, she had the same exact problem that we

talked about of the adjusting. Our profession is based on metrics that are actually there

and we can put our hands on. It's very tactile. *** Now, you could write from a

hypothetical, but we both were like, well, what do we write for, what can we do here,

there's nothing here."

¶ 14    According to Misceo, the State Farm adjuster was willing to rewrite her estimate if

Misceo showed her evidence that it was inaccurate, but there "was only a couple things [he]

could actually prove." Yet, as Misceo admitted, he "had the burden of proof because nothing was

there" and thus he "couldn't in good faith ask for things [he] had never actually seen." Misceo

conceded that he had "zero [physical] evidence" to "compare or contrast what was contained in

[State Farm's] estimate." Misceo, however, negotiated some items with State Farm's adjuster,

resulting in an additional payment of $4,129.36 to plaintiff (as noted above). Thereafter, plaintiff

made an additional claim for loss of use, but State Farm denied the claim because the Property

"was not being rented to others or being held for rental on the date of the loss."

¶ 15    On May 29, 2020, plaintiff filed the instant complaint against State Farm for declaratory

judgment, seeking $122,682.02 in damages. That amount allegedly constituted the difference

between what State Farm had already paid and plaintiff's damages estimate, which consisted of

$98,340 for property damages, $40,800 total for lost rents, and $19,800 for plaintiff's rent at

another property during the repairs/renovations. We note, however, that plaintiff's math as to the

difference between his claimed damages and what State Farm had already paid appears to be

incorrect in his complaint. Plaintiff's claimed property damages were based on the quote

provided by Rogers.

¶ 16    State Farm subsequently moved for summary judgment, asserting that plaintiff was not entitled to lost rents under the Policy because it was not casually related to the break-in incident. Moreover, plaintiff was not entitled to additional payments for damages because he did not produce any evidence either challenging or refuting State Farm's estimate and adjustment.

¶ 17    Plaintiff responded that State Farm failed to fulfill its obligations under the Policy in a timely manner, that State Farm should compensate him for additional "progressive and ongoing losses resulting from" the break-in, and that he is entitled to damages for lost rents and additional living expenses because the Property was not vacant at the time of the incident. In reply, State Farm moved to strike several of plaintiff's response exhibits, consisting of a 2016 appraisal report for the Property, a Home Deport purchase history summary, and e-mails between plaintiff and State Farm personnel concerning the Property's vacancy, because they lacked a proper foundation and constituted inadmissible hearsay. Likewise, nothing in plaintiff's response established a genuine issue of material fact, thus making summary judgment appropriate.

¶ 18    The circuit court ultimately agreed with State Farm and granted its motion for summary judgment, as well as its motion to strike plaintiff's response exhibits. In reaching its conclusion, the court found that "State Farm met its initial burden of production by establishing that [plaintiff] lacks sufficient evidence to prove his claim." This shifted the burden of proof to plaintiff who had to present evidentiary materials demonstrating a genuine issue of material fact. The court also found that "plaintiff *** failed to bring forward any additional evidence regarding the extent of the initial Incident-related losses," and therefore, "there is no genuine issue of material fact on the extent of initial losses." Furthermore, the court rejected plaintiff's argument that he was entitled to additional compensation due to State Farm's delay in compensating him

for his claim because plaintiff did not "produce any evidence that the delay caused any damages to the Property or that State Farm failed to timely fulfill its obligations."

¶ 19    Finally, the court found that plaintiff was not entitled to compensation for lost rents because the Property was uninhabitable at the time of the break-in pursuant to a court order and the Policy expressly provided that State Farm will not pay for losses caused by the enforcement of such an order. Specifically, the court noted:

> "[Plaintiff] has been subject to a court order since May 5, 2019 that orders him 'not to rent, use, lease, or occupy the entire premises until further order of the court.' *** Communications to [plaintiff] indicate that such further order of the court would not be granted until all code violations were remedied, which would involve removing any work done without a permit and reinstalling it. *** There has not yet been a court order allowing [plaintiff] to rent, use, lease, or occupy the Property.

> The Incident occurred on May 31, 2019. At that time, [plaintiff] was prohibited by court order from renting the Property or occupying it himself. Thus, the Property was not made uninhabitable by the Incident, it was made uninhabitable by the enforcement of an ordinance or law regulating its construction and repair nearly a month earlier. Since losses caused by the enforcement of an ordinance or law are not 'losses insured,' State Farm is not obligated to pay [plaintiff] for the fair rental value of any portion of the Property or for [plaintiff's] additional living expenses. State Farm is entitled to judgment as a matter of law."

The court's summary judgment order was entered on March 22, 2024. This appeal followed.

¶ 20                                   ANALYSIS

¶ 21 Initially, State Farm contends this appeal should be dismissed because plaintiff violated Illinois Supreme Court Rule 342 (eff. Oct. 1, 2019) by failing to attach an appendix to his opening brief containing relevant documents such as the circuit court's summary judgment order. That rule provides:

> "The appellant's brief shall include, as an appendix, a table of contents to the appendix, the judgment appealed from, any opinion, memorandum, or findings of fact filed or entered by the trial judge or by any administrative agency or its officers, any pleadings or other materials from the record that are the basis of the appeal or pertinent to it, the notice of appeal, and a complete table of contents, with page references, of the record on appeal." *Id.*

Plaintiff concedes that he "inadvertently failed to include the [lower court's] Opinion in the appendix," but notes that the opinion is included in the record and thus the omission does not warrant dismissal of his appeal. We agree. Because plaintiff's brief is otherwise sufficient and this deficiency does not hinder our review, we decline to dismiss his appeal. See, *e.g.*, *Longo Realty v. Menard, Inc.*, 2016 IL App (1st) 151231, ¶ 18 ("But, where, as here, a brief is adequate in most respects and the deficiencies do not hinder our ability to review the issues at hand, we will not strike it.").

¶ 22 Turning to the merits, plaintiff contends the circuit court erroneously granted summary judgment to State Farm because genuine issues of material fact existed concerning whether he was entitled to additional damages and whether State Farm breached its contractual obligations under the Policy. Construction of an insurance policy and a determination of the parties' rights under the policy are questions of law properly disposed of by way of summary judgment. *Zdeb v. Allstate Insurance Co.*, 404 Ill. App. 3d 113, 116 (2010). Summary judgment should be granted

when, as here, the pleadings, admissions on file, depositions, and any affidavits, construed strictly against the moving party, reveal no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. *Willett v. Cessna Aircraft Co.*, 366 Ill. App. 3d 360, 368 (2006). We review a circuit court's summary judgment ruling *de novo*, and furthermore, we may affirm the court's ruling on any basis in the record, regardless of whether the court relied on that basis or whether its reasoning was correct. *Miller v. Lawrence*, 2016 IL App (1st) 142051, ¶¶ 21-22.

¶ 23    In a declaratory judgment action concerning an insurer's duty to defend, courts compare the factual allegations in the underlying complaint to the relevant coverage provisions in the insurance policy. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010). "If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." *Id.* While the allegations in the underlying complaint must be liberally construed in favor of the insured, if it is clear from the face of the complaint that those allegations fail to state facts that bring the case within, or potentially within, the policy's coverage, the insurer may properly refuse to defend. See *Acuity Insurance Co. v. 950 West Huron Condominium Ass'n*, 2019 IL App (1st) 180743, ¶ 24; *Greenwich Insurance Co. v. RPS Products, Inc.*, 379 Ill. App. 3d 78, 85 (2008).

¶ 24    Likewise, because an insurance policy is a contract, we apply general rules of contract interpretation to the policy. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). Our primary objective, therefore, is to ascertain and give effect to the parties' intentions, which is best expressed through the contract's language. *Id.* If the words employed in the contract are clear and unambiguous, as is the case here, they must be given their plain, ordinary, and popular meaning. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153

(2004). Moreover, provisions in an insurance policy excluding or limiting coverage will be read narrowly and their application must be free and clear of doubt. *Nationwide Property & Casualty Insurance Co. v. State Farm Fire & Casualty Co.*, 2022 IL App (1st) 210267, ¶ 25. Last, "the insurer bears the burden of affirmatively demonstrating that a claim falls within an exclusion." *Id.*

¶ 25    After reviewing the record in this case, we cannot say the lower court erred in granting State Farm's summary judgment motion because plaintiff failed to present evidence that he was entitled to more damages or that State Farm's estimate was incorrect. As set forth, State Farm's adjuster determined that plaintiff was entitled to over $30,000 for damages stemming from the break-in at the Property. While plaintiff claims he was entitled to more than three times that amount based on estimations from his contractor (Rogers) and the public adjuster (Misceo), neither of those estimations were accurate regarding damages from the break-in.

¶ 26    Rogers' testimony conclusively established that plaintiff was planning to do a full gut rehab of the Property before the break-in occurred, as delineated at length above. Rogers testified that he was already doing work at the Property on May 15, 2019, a couple weeks before the break-in. Moreover, Rogers' quote of $98,340 was for a full gut rehab, not only for damages from the incident. As the lower court aptly observed, "Rogers testified in his deposition that he was not aware of the Incident when he produced the quote, that the quote was not specifically tailored to initial Incident-related losses, and that he never saw State Farm's adjuster's estimate." We agree with the court below that Rogers' quote does not support plaintiff's claim that he is entitled to additional damages from State Farm.

¶ 27    Likewise, Misceo did not see the property until it had been fully gutted. Misceo even admitted that "the condition of the [P]roperty *** made it nearly impossible for [him and the

State Farm adjuster] to do [their] job because there was nothing left, there was nothing in the house." Although Misceo negotiated some items with State Farm's adjuster, he "couldn't in good faith ask for things [he] had never actually seen." Therefore, even though Misceo's initial estimate exceeded State Farm's estimate by more than $100,000, that was not an accurate estimation of the damages since Misceo repeatedly admitted there was nothing left in the Property for him to assess. We again agree with the lower court that Misceo's testimony does not support plaintiff's claim that he is entitled to additional damages from State Farm.

¶ 28    Next, we reject plaintiff's claim that questions of fact existed as to whether he is entitled to lost rents. As stated, plaintiff sought compensation for lost rents on two units at the Property, as well as losses he incurred for having to pay rent at another location (since he previously resided at the Property). The Policy, however, expressly states, as relevant here, that State Farm "will not pay for, under any part of this policy, any loss that would not have occurred in the absence of…**Ordinance or Law**, meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a ***building structure*** or other structure." When the break-in occurred on May 31, 2019, plaintiff was under a court order that prohibited him from renting, using, leasing, or occupying the Property "until further order of the court." The Property was made uninhabitable by that court order issued several weeks before the break-in, and therefore, State Farm was not obligated to pay plaintiff for lost rents or his additional rent payments for the other location as those losses were not covered under the Policy.

¶ 29    Accordingly, we conclude that State Farm was entitled to judgment as a matter of law on that issue, as well as plaintiff's claim for additional incident-related damages.

¶ 30    Finally, plaintiff contends the circuit court "ignore[ed] relevant evidence regarding State Farm's breach of contract and plaintiff's right to an appraisal." State Farm, however, asserts that

plaintiff never raised this issue below, thereby forfeiting it on appeal. We agree. While plaintiff asserted he was denied the opportunity to an appraisal and/or arbitration in the conclusion of his responsive pleading, he did not sufficiently argue the issue anywhere in the body of the pleading. He even admits this fact.

¶ 31     Plaintiff points to the conclusion of his response to State Farm's summary judgment motion, wherein he wrote:

> "The policy explicitly provides avenues for appraisal and arbitration to settle disputes in a fair and impartial manner. Regrettably, [State Farm] has denied the plaintiff these vital options, depriving them of the opportunity for a just and expeditious resolution."

This last-minute mention of the Policy's appraisal and arbitration provision cannot constitute preservation for appellate purposes. As proof, the circuit court did not even address the issue in its final order because it was not sufficiently laid out. We thus agree with State Farm's forfeiture argument.

¶ 32     What is more, plaintiff has similarly failed to include appropriate citations of his arguments on these issues on appeal. In his opening brief, plaintiff attempts to argue that the words "arbitration" and "appraisal" are interchangeable but instead of providing citations to the authority relied upon, he simply writes "[needs citation]." Reviewing courts are entitled to have the issues clearly defined, with pertinent authorities cited and a cohesive legal argument presented. *People v. Clay*, 167 Ill. App. 3d 628, 637 (1988). This court is not a repository for an appellant to foist the burden of argument and research. *Id.*; *Cimino v. Sublette*, 2015 IL App (1st) 133373, ¶ 3. Nor is it the obligation of this court to act as an advocate or seek error in the record. *U.S. Bank v. Lindsey*, 397 Ill. App. 3d 437, 459 (2009). Our docket is full, and noncompliance

with the rules does not help us resolve appeals expeditiously. *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 15.

¶ 33    Accordingly, and for the reasons set forth above, we conclude that the circuit court properly entered judgment in favor of State Farm in this case.

¶ 34                              CONCLUSION

¶ 35    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 36    Affirmed.

*Bunjo v. State Farm Fire & Casualty Co.*, **2025 IL App (1st) 241010**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 20-CH-4377; the Hon. Caroline Kate Moreland, Judge, presiding. |
| **Attorneys for Appellant:** | Abigail Schmitz, of Abigail Schmitz Law LLC, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Daniel J. Nolan and Matthew E. Szwajkowski, of O'Hagan Meyer LLC, of Chicago, for appellee. |