2026 IL App (1st) 250734-U

No. 1-25-0734

Order filed March 20, 2026

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| RACHEL COOPER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2025 OP 71468 |
| | ) | |
| GERRICK JONES, | ) | Honorable |
| | ) | Marina E. Ammendola, |
| Respondent-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WILSON delivered the judgment of the court.
Presiding Justice Mitchell and Justice Mikva concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The trial court's issuance of an order of protection is affirmed where the record on appeal is insufficient for review.

¶ 2     Respondent Gerrick Jones appeals *pro se* from the trial court's issuance of a civil plenary order of protection in favor of petitioner Rachel Cooper and the minor J.C. and against respondent. On appeal, respondent argues that petitioner presented text messages that were never "cross-

examed [*sic*]," gave perjured testimony, and failed to call witnesses to support her allegation of abuse. We affirm.

¶ 3    The record on appeal comprises a single volume of the common law record, without a report of proceedings or acceptable substitute.

¶ 4    On February 19, 2025, petitioner filed *pro se* a petition for a civil emergency and plenary order of protection against respondent using the standardized form. Petitioner checked the box identifying a "dating relationship (including ex)" with respondent.

¶ 5    Petitioner attached her affidavit, averring that she and respondent dated between October 2023 and April 2024 and had never lived together. Petitioner was, at the time of filing, pregnant with respondent's child. On or about January 16, 2025, respondent accompanied petitioner to a prenatal appointment and grabbed her breasts without her consent. Respondent also grabbed petitioner's breasts in the Lyft they shared after the appointment. On January 2, 2025, at another prenatal appointment, respondent "grabbed [petitioner] from behind and squeezed [her] bottom" after she had asked him not to touch her.

¶ 6    On August 26, 2024, at approximately 4 p.m., petitioner and respondent argued on the front porch of petitioner's home. Respondent ripped petitioner's hair band out of her hair, slapped her head, and left. Petitioner filed a police report.

¶ 7    On April 27, 2024, at approximately 5 p.m., petitioner received a message on her phone from another man while she was riding in respondent's vehicle. Respondent, who was driving, became angry and began yelling, speeding, and swerving towards parked vehicles. Respondent then pulled the vehicle over, pushed petitioner's head against the window, strangled her, kicked her out of the vehicle, and broke her phone. Petitioner filed another police report.

¶ 8 In January or February 2024, respondent went to petitioner's home to discuss their relationship, pinned her on the bed, and "raped" her.

¶ 9 Petitioner further averred that over the course of their relationship, respondent physically and emotionally abused her by slapping her on the head and "bottom," grabbing her breasts without consent, appearing at her workplace uninvited and harassing her in front of her supervisor and coworkers, watching her through the windows of her workplace, waiting on her porch for her to return home, and calling her derogatory names. Petitioner feared respondent would continue to abuse her, harass her, interfere with her personal liberty, intimidate her dependents, and stalk her.

¶ 10 The trial court issued an emergency order of protection to petitioner on the same date the petition was filed effective through March 12, 2025, and scheduled a hearing for that date. The emergency order of protection indicated that the court heard petitioner's evidence and testimony, and the court had made oral findings that were videotaped or recorded by a court reporter and "incorporated" into the order.

¶ 11 On March 12, 2025, the trial court issued a civil two-year plenary order of protection against respondent by default, effective until March 12, 2027. The order indicated that the court's findings "were made orally for the transcription." That same day, respondent filed a motion to reconsider, asking the trial court to "reopen [the] case" because he was in the "wrong courtroom."

¶ 12 On March 21, 2025, the trial court vacated the plenary order of protection, reinstated the emergency order of protection, and scheduled a hearing for April 16, 2025.

¶ 13 On April 16, 2025, the trial court again entered a two-year civil plenary order of protection, effective until April 16, 2027, in favor of petitioner and the minor J.C., who was born during the pendency of the proceedings. The court issued the order of protection "after hearing" and specified

that its findings "were made orally for the transcription." The order prohibited respondent from threatening or committing harassment, physical abuse, intimidation, or stalking against petitioner or J.C., or interfering with their personal liberty. It also granted exclusive possession of petitioner's residence to petitioner and ordered respondent to stay away from the residence. The order mandated "no contact by any means" and directed respondent to stay away from identified addresses while the protected individuals were present. The order prohibited respondent from taking, transferring, encumbering, damaging, or otherwise disposing of petitioner's residence. The order granted petitioner the physical care and possession of J.C., and prohibited respondent from removing J.C. from the physical care of petitioner or "any designated caregiver." The order denied respondent visitation and prohibited him from removing J.C. from Illinois or concealing J.C. within Illinois.

¶ 14 On appeal, respondent challenges the issuance of the civil plenary order of protection, arguing that the trial court erred in failing to scrutinize text messages that petitioner presented for dates, numbers, and relevance. Respondent argues that, despite petitioner's numerous interactions with police officers, petitioner never informed any of them that respondent had abused her. Respondent alleges that petitioner falsely claimed that he had abused her. Respondent also maintains that petitioner alleged multiple instances of abuse in public places, but she produced no witnesses. Finally, respondent asserts that throughout their relationship, petitioner had been the "aggressor sexually," and consensually gave him explicit photos on multiple occasions.

¶ 15 As an initial matter, respondent's *pro se* appellant brief fails to meet the requirements of Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020), which provides mandatory procedural rules governing the content and format of appellate briefs. *McCann v. Dart*, 2015 IL App (1st)

141291, ¶ 12. Among the deficiencies, respondent's brief contains no statement of facts. See Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020) (the statement of facts "shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal"). Respondent's brief also fails to develop arguments and cites no legal authority. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (an appellate brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on").

¶ 16 We will not afford more leniency to respondent as a *pro se* litigant, who must abide by the same rules as licensed attorneys. *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 78. The rules governing appellate briefs are not mere suggestions, and it is within this court's discretion to strike a brief and dismiss an appeal for failure to comply with the rules. *Venturella v. Dreyfuss*, 2017 IL App (1st) 160565, ¶ 23. However, we decline to do so here, where it is apparent that respondent challenges the issuance of the order of protection. *Bunjo v. State Farm Fire & Casualty Co.*, 2025 IL App (1st) 241010, ¶ 21.

¶ 17 That said, our review is impeded by the inadequate record on appeal.

¶ 18 Respondent, as appellant, bears the burden of providing this court with a sufficiently complete record so as to review the trial court's issuance of the order of protection. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984). As noted, respondent failed to provide any report of proceedings or acceptable substitute (Ill. S. Ct. R. 323(c), (d) (eff. July 1, 2017)) of the hearing during which the trial court issued the challenged civil plenary order of protection.

¶ 19 We will not overturn a trial court's entry of an order of protection absent a clear abuse of discretion. *In re Marriage of Kiferbaum*, 2014 IL App (1st) 130736, ¶ 23. Absent any report of

proceedings or acceptable substitute, this court is unable to review the testimony given at the hearing on petitioner's petition for an order of protection, any other evidence submitted, the arguments made, and the trial court's basis for its decision to determine whether it abused its discretion. This court is therefore unable to determine whether any error occurred. See *Foutch*, 99 Ill. 2d at 391 ("From the very nature of an appeal it is evident that the court must have before it the record to review in order to determine whether there was the error claimed by the appellant."). We resolve any doubt arising from the incompleteness of the record against respondent as the appellant. *Id.* at 392. Absent a sufficient record, this court must presume that the trial court's order was "in conformity with law and had a sufficient factual basis" for its issuance of an order of protection against respondent. *Id.* Consequently, we have no basis to disturb the trial court's judgment.

¶ 20    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 21    Affirmed.